**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Dora M. A., | Case No. 19-cv-357 (WMW/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew Saul, Commissioner of Social Security, | |
| Defendant. | |

Dora M. A., 1007 Apartment Lane SW, Apartment 212, Forest Lake, MN 55025 (pro se Plaintiff); and

Marisa Silverman, Social Security Administration, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I. INTRODUCTION

Plaintiff Dora M. A. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. This matter is before the Court on the parties' cross motions for summary judgment. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Wilhelmina M. Wright, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, the Court recommends that Plaintiff's motion be denied and that Defendant's motion be granted.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an action for DIB on July 2, 2014, alleging a disability onset date of June 1, 2013. Plaintiff alleged, among other things, impairments of bipolar disorder, manic depression, paranoid schizophrenia, anxiety, cancer, delusional disorder, insomnia, and panic attacks. Plaintiff was found not disabled on January 29, 2015. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held on April 6, 2016 and, on March 13, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied her request for review. Plaintiff now seeks review by this Court.

### B. Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the following severe impairments: asthma, bipolar disorder, and substance use disorder. (Tr. 17). The ALJ further found and concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 18). The ALJ then found Plaintiff to have the residual functioning capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant must avoid concentrated exposure to gases, fumes, and pulmonary irritants. She is able to perform work that requires no more than simple repetitive that is considered low stress (only decision making and occasional adapting to workplace changes); she should have only occasional contact with coworkers and

> supervisors and contact with the public should be only incidental to the work performed.

(Tr. 20). The ALJ concluded that Plaintiff was unable to perform any past relevant work (Tr. 24); that she was an individual closely approaching advanced age on the alleged disability onset date; and that she had at least a high school education and was able to communicate in English. (Tr. 25). The ALJ further concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). In particular, the ALJ determined that Plaintiff could work as a cleaner/housekeeper, collator/operator, and merchandise maker. (Tr. 25). Accordingly, the ALJ found that Plaintiff was not disabled since June 1, 2013. (Tr. 26).

### III. ANALYSIS

#### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work

experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)); 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir. 2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578) (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of

4

those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578.

### B.  Administrative Record

Plaintiff last worked in 2013. (Tr. 40). She primarily worked as a hairstylist. (Tr. 40-41). Plaintiff was fired from multiple hair salons; she indicates it was because she was unable to keep up with the job. (Tr. 43). She also testified that she had a difficult time following instructions and could not function around other people. (Tr. 57-59). She further testified that she struggled with bipolar disorder and depression. (Tr. 53-55).

Over the past several years, Plaintiff has received treatment from several health care providers. In June 2012, she appeared for a mental health check-up at the Denver Health Medical Center. (Tr. 252). She was prescribed medication to assist with anxiety. (*Id.*). Plaintiff indicated around the same time that her anxiety made it difficult for her to work. (Tr. 254). In December 2013, she was treated for a panic attack. (Tr. 297). The treating provider noted that Plaintiff was "quite difficult to focus;" that she was "sleeping poorly;" and that she required frequent use of an inhaler. (*Id.*). At that time, Plaintiff reported that she was homeless. (*Id.*).

Approximately eight months later, a mobile crisis evaluation was requested of Plaintiff. (Tr. 264). The reporting provider indicated that while Plaintiff presented "with some manic symptoms," she did not present as "gravely disabled." (*Id.*). The provider did note, however, that Plaintiff's presentation that day was "much more stable than her usual presentation." (*Id.*). Plaintiff also was prescribed medication for bipolar disorder, anxiety, and asthma. (Tr. 259-60).

In August 2014, Plaintiff presented for review of a behavioral health plan and a mental health check-up. She exhibited good eye contact and hygiene; appeared engaged; and demonstrated appropriate affect. (Tr. 301). Her orientation was alert and the treating provider noticed no abnormalities in her thought content. (*Id.*). Her thought process, however, was "tangential" and she reported feeling "agitated." (*Id.*).

In January 2015, following an emergency room encounter in November 2014, Plaintiff was examined by Dr. William H. Graham. (Tr. 330). Plaintiff reported a depressed mood; feeling helpless, hopeless, and worthless; and trouble sleeping. (*Id.*). She further stated that she had problems with her memory; concentrating; and accomplishing tasks. (*Id.*). She also reported chronic pain. (Tr. 331). Plaintiff indicated she had not held a job for two years and that she could not do any household chores. (*Id.*). She stated, however, that she was able to dress and bathe herself, as well as prepare meals. (*Id.*). Dr. Graham reported that Plaintiff was "reasonably well cared for and well groomed." (Tr. 332). He indicated that her thought process appeared logical and organized, but that she seemed distracted and disorganized at other times. (*Id.*). He further noted that Plaintiff was oriented as to person, place, and time. (*Id.*). Dr. Graham diagnosed Plaintiff with bipolar mood

6

disorder, polysubstance abuse, and chronic pain. (Tr. 333). He indicated Plaintiff had a GAF score of 50. (*Id*.).

Dr. Graham stated that Plaintiff would have a moderate impairment in her ability to understand, remember, or carry out instructions and in her ability to sustain concentration, persistence and pace. (Tr. 333-34). He further noted that Plaintiff "would have a moderate impairment in her social functioning" and a "marked impairment in her adaptive functioning, her ability to respond to supervisors, coworkers, work pressures, and the general public on an ongoing basis[.]" (Tr. 334). As a result, he believed that Plaintiff would struggle to complete tasks without special supervision or complete a normal workday or workweek without interruption. (*Id*.). Dr. Graham noted that some of Plaintiff's difficulties might result from alcohol consumption or the use of other drugs. (*Id*.).

State consultant Douglas Hanze reviewed Plaintiff's claim for DIB. (Tr. 88). He noted that Plaintiff had mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 86). Regarding Plaintiff's RFC, Dr. Henze noted that Plaintiff had moderate limitations in her ability to: understand and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruption and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 90-91). He also stated that Plaintiff had moderate limitations in her ability to interact appropriately with the general public and respond appropriately to changes in the work setting. (Tr. 92). In general, he determined that Plaintiff was "capable

7

of work of limited complexity," provided that she had "minimal to no inter-action with the general public." (Tr. 92).

### C. Plaintiff's Challenges to the ALJ's Step Three Findings

Plaintiff first argues that her mental illness makes her unable to understand and remember information or apply information to stay on track; limits her ability to interact with others and maintain and remember information; and makes it difficult for her to interact with coworkers, supervisors, or the general public. (ECF No. 16, p. 2). She contends that though the ALJ found she had marked limitation in her ability to interact with others and moderate limitations in her ability to understand, remember, and apply information, the ALJ did not fully appreciate the extent to which those limitations made her unable to work. The Court interprets this argument as a challenge to the ALJ's finding that Plaintiff did not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.

Under step three of the five-step process for determining disability, the ALJ must consider whether the impairment is, or is comparable to, a listed impairment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). When evaluating whether a mental impairment is comparable to a listed impairment, the ALJ must consider criteria under paragraph B of Appendix of the Social Security Administration regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.00(A)(2)(b). A person satisfies the Paragraph B criteria by showing an extreme limitation of one or a marked limitation of two of the following four areas of mental functioning: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the

8

ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)-(4), 12.00(F)(1). The term "extreme" means an inability to function in the relevant area; the term "marked" means a serious limitation; and the term moderate means a "fair" ability to perform the identified function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c)-(e). Here, the ALJ found Plaintiff had a moderate limitation in her ability to understand, remember, or apply information, a marked limitation in her ability to interact with others, a moderate limitation in her ability to maintain concentration, persist, or maintain pace, and a mild limitation in her ability to adapt or manage herself. The Court will consider the ALJ's findings as to each area of mental functioning.

Regarding Plaintiff's ability to understand, remember, or apply information, as well as Plaintiff's ability to maintain persistence, concentration, and pace, the ALJ relied heavily on Dr. Graham's report. The ALJ cited to specific evidence in Dr. Graham's report that showed while Plaintiff complained of problems with her memory and her ability to apply information, she was able to perform certain calculations and recall information when encouraged. The ALJ's reliance on Dr. Graham's report was appropriate. Dr. Graham indicated that Plaintiff demonstrated an ability to remember the street she was on, to repeat six digits forward and four backward, and to do three step commands. The ALJ's findings as to each of these areas were therefore supported by substantial evidence.

The ALJ also relied on Dr. Graham's report in assessing Plaintiff's ability to interact with others. Dr. Graham indicated that though Plaintiff was capable of interacting in a pleasant and reasonable fashion with others, she also argued frequently with her friends. The ALJ further noted that law enforcement had responded to Plaintiff's home several

9

times over the course of a year and that Plaintiff became angry and combative when she visited the hospital in 2012 and 2014. Given these circumstances, it was more than reasonable for the ALJ to conclude Plaintiff had significant limitations in her ability to interact with others. But because the evidence showed that Plaintiff was also capable of engaging appropriately with others on at least some occasions, it was well within the ALJ's discretion to determine Plaintiff had a marked limitation in this area of functioning, rather than an extreme limitation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b)-(c). Thus, the ALJ's findings were supported by substantial evidence.

Finally, while not directly addressed by Plaintiff, the Court will consider the ALJ's findings regarding Plaintiff's ability to adapt and manage herself. Though Plaintiff previously reported that she could not see, hear, or talk, and that she required her friend to perform many activities of daily living for her, the ALJ correctly noted that the objective evidence in the record demonstrated otherwise. The documentary evidence, including Plaintiff's consultation with Dr. Graham, indicates Plaintiff exhibited good hygiene; was able to prepare meals; and was generally able to dress and bathe herself. This evidence was sufficient for the ALJ to conclude Plaintiff had only mild limitations in her ability to adapt and manage herself.

### D. Challenges to the ALJ's RFC Findings

Plaintiff also argues that though the ALJ found she had marked limitations in her ability to interact with others, the ALJ also found, in assessing Plaintiff's RFC, that she could "still 'occasionally' interact with coworkers, supervisors, and the general public." (ECF No. 16, p. 3). The Court interprets this argument as challenging the adequacy of the

ALJ's RFC findings and whether those findings are supported by substantial evidence in light of the ALJ's step three analysis.

The RFC is the most a person can do despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545; 416.945. The Commissioner's determination of a person's RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "The RFC must be supported by 'at least some medical evidence.'" *Id*. (quoting *Wildman v. Astrue*, 569 F.3d 959, 969 (8th Cir. 2010)).

An ALJ is not required to account directly for step three limitations in his or her RFC findings. *Gann v. Colvin*, 92 F. Supp. 3d 857, 869 (N.D. Iowa 2015). That is because RFC findings require a more detailed assessment than required by the step three analysis. *Crane v. Colvin*, No. 13-cv-046, 2014 WL 460858, at *4 (W.D. Mo. Feb. 5, 2014) (citing *Lacroix v. Barnhart,* 465 F.3d 881, 888 n. 3 (8th Cir. 2006)); *see also Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004) (explaining that a person's RFC "is a function-by-function assessment of an individual's ability to do work-related activities based on the relevant evidence"). It would seem to the Court, however, that an RFC finding that was inconsistent with a step three finding would raise serious questions as to what evidence the ALJ found credible and would require careful scrutiny as to whether substantial evidence could truly support the conflicting findings. Thus, because the ALJ found that Plaintiff had marked, or "serious", 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d), limitation in

11

her ability to interact with others, the Court will consider whether that limitation is addressed by the ALJ's RFC findings.

In this case, the ALJ limited Plaintiff's interactions with coworkers and supervisors as occasional and contact with the public as only incidental to the work performed. The ALJ supported this finding with extensive discussion of the record, including evidence that showed Plaintiff acted inappropriately at the emergency room and that she frequently argued with friends, but that also showed Plaintiff could interact with others in a pleasant and reasonable fashion, and that she was able to communicate effectively. The evidence the ALJ considered in making this assessment was largely the same as the evidence the ALJ considered in performing the step three analysis. Under the circumstances, the ALJ's finding that Plaintiff should have only occasional contact with others is consistent with the ALJ's finding that Plaintiff had serious, but not extreme, limitations in her ability to interact with others. The ALJ's RFC finding is therefore supported by substantial evidence. It also accounts for the limitations the ALJ imposed when addressing step three of the disability analysis.

Finally, Plaintiff notes throughout her memorandum that she is unable to work more than nine hours a week as a result of her mental illness. The Court also construes this argument as a challenge to the ALJ's RFC findings.[1] Here, the ALJ explained that though Plaintiff experienced some "non-exertional limitations due to mental impairments" (Tr. 24), those impairments did not prevent her from accomplishing simple, routine, and

---

[1] Though the ALJ also considered whether Plaintiff's physical impairments prevented her from working full time, Plaintiff did not challenge or otherwise reference those findings in her motion for summary judgment.

repetitive tasks. The ALJ noted that his finding was supported by medical findings, the physician opinions, and the claimant's reported activities.

The ALJ's finding is supported by substantial evidence. The record establishes that Plaintiff was able to care for herself and engage in normal activities of daily living. The record further establishes that Plaintiff's thought process was normal, though she occasionally became distracted, and that she was alert and oriented to person, place, and time. Furthermore, as Defendant notes, the record largely suggests that Plaintiff stopped working because of physical impairments, including difficulty standing, hearing, and maintaining control of her hands. Plaintiff also did not identify any evidence in the record that shows her mental impairments prevent her from working full time. Under the circumstances, the ALJ was within his discretion to find that Plaintiff's mental impairments did not preclude her from working full-time.

## IV.   RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 16) be **DENIED** and the Commissioner's Motion for Summary Judgment (ECF No. 18) be **GRANTED**.


Date: January 8, 2020                              *s/ Tony N. Leung*
                                                                     Tony N. Leung
                                                                     United States Magistrate Judge
                                                                     District of Minnesota

                                                                     *Dora M. A. v. Saul*
                                                                     Case No. 19-cv-357 (WMW/TNL)

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).